[Civil No. 4564. Filed June 5, 1944.]

[149 Pac. (2d) 671.]

REBECCA GREBER, Appellant, v. NEW YORK LIFE INSURANCE COMPANY, a Corporation, Appellee.

342

Mr. John W. Ross, for Appellant.

Messrs. Ellinwood & Ross and Mr. Jos. S. Jenckes, Jr., for Appellee.

STANFORD, J.—This is a case where double indemnity against the appellee, New York Life Insurance Company, was sought because of claimed accidental death. The insured was David Greber. The policy was issued April 14, 1925. The insurance company agreed to pay $1,000 upon receipt of due proof of the death of insured, or double that amount upon due proof that death before the maturity of the endowment resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause. On the occurrence of the death of Greber, June 4, 1936, appellee paid his wife, Rebecca Greber, the beneficiary, $1,000 but refused to pay the extra $1,000, and thereupon the beneficiary, Rebecca Greber, filed her first suit in the Superior Court of Pima County, Arizona, for the additional $1,000 claiming that death resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause. The case was tried at the venue of the parties in Pima County, Arizona. A verdict of the jury gave Rebecca Greber the double indemnity, and from that verdict and the judgment

following, appellant, who is the appellee in this case, appealed to this court.

This court in the case entitled *New York Life Insurance Company* v. *Greber,* reported in 55 Ariz. 261, 100 Pac. (2d) 987, reversed the lower court on the ground that the evidence did not sustain the verdict and judgment, and the case was remanded for a new trial. Upon the presentation of the case at the new trial in said county, and at the close of the evidence of the appellant herein, the appellee moved for an instructed verdict which was, by the court, granted, and from that verdict and judgment following, this appeal now comes to us.

The appellant submits but three assignments of error:

## "I

"The court erred in granting appellees' motion for a directed verdict, because appellant had presented evidence from which reasonable men could infer that deceased came to his death from bodily injuries resulting solely and independently from the accident.

## "II

"There was error by the lower court in entering judgment for the appellee on the directed verdict.

## "III

"The court erred in denying appellant's motion for a new trial for reasons specified in Assignment No. 1."

By appellant's main assignment of error it is claimed that appellant, "had presented evidence from which reasonable men could infer that deceased came to his death from bodily injuries resulting solely and independently from the accident," and that is the issue for us to determine here.

■ We quote the rule laid down in *New York Life Insurance Company* v. *Greber, supra,* as follows:

". . . . (a) when an accident causes a diseased condition which, together with the accident, results in death, the accident alone is considered the cause of death; (b) when at the time of the accident the insured was suffering from some disease, but such disease had no casual connection with the death resulting from the accident, the accident is the sole cause of the death, and (c) when at the time of the accident there was an existing disease which, cooperating with the accident, resulted in the death, the accident cannot be considered as the sole cause, independent of all other causes. . . . "

The proximate cause of the death in this cause was pneumonia.

█ Dr. E. J. Gotthelf testified in both the first and second cases. On cross-examination in the present case in the trial court he testified as follows:

"Q. Now, isn't it also true at the former trial you said—rather, Mr. Ross asked you this question: 'I will ask you this question, Doctor: Did Mr. Greber die as a direct and proximate consequence of the accident or of the blow, that you have testified about, irrespective of any disease from which he might have been suffering at the time of the accident.' And you answered in response—No, then the Judge said, 'Can you answer that question by a "yes" or "no" answer, Doctor,' and you said, 'No, I couldn't.' The question was asked and answered in that manner, was it not? A. It was.

"Q. Then the question was read again and you answered: 'In my mind he did die due to the blow he received on his chest. Of course, there are other factors that have to be—got to be taken into consideration in that question. His heart condition, his asthmatic condition, they weren't primary factors but they were contributing factors in my mind. In my mind the blow was the contributing factor that produced death. That is the best way I can explain it.' And that was your opinion at that time, wasn't it? A. Yes, sir.

"Q. Then, Doctor, I on cross examination asked you this question: 'In this case then, as I get it, the chronic myocarditis cannot be overlooked as a contributory factor in either causing the pneumonia or establishing a so-called fertile field for the infection, is that correct.' A. Yes, sir."

The evidence in the case shows that the deceased on the 31st day of March, 1936, had an automobile accident and had a blow on his chest from the same. He had previously been quite ill, but was allowed by his doctor to go out with his car and this accident occurred.

Dr. Gotthelf on cross-examination in the instant trial was questioned as follows:

"Q. Didn't I ask you on the former trial: 'Doctor, in your true case of traumatic pneumonia, that is, pneumonia caused by a blow, that pneumonia ordinarily develops within a relatively short space of time, isn't that true,' and didn't you answer, 'That is the usual history, yes'? A. I say it may or may not.

"Q. Didn't you make that answer, 'that is the usual history, yes'? A. Well, if that is my answer that is right.

"Q. And you will stick by it? A. Yes, sir; I will have to."

The evidence in this case shows that death occurred June 4, 1936, some two months and five days after the accident. And, although Dr. Gotthelf did testify on direct examination in the instant case that the deceased came to his death from bodily injury resulting solely and independently from the accident, he also stated, as it will be seen, that the existing diseases from which the deceased Greber was suffering contributed to the cause of his death.

In the prior case it was found that there was not sufficient evidence in the record to sustain a verdict that the death of the insured resulted directly and independently of all other causes from bodily injury

effected solely through external, violent and accidental cause. And although the case was remanded for new trial, we are unable to find that there was competent evidence submitted by the appellant to warrant the submission of this case to a jury.

The judgment is affirmed.

McALISTER, C. J., and EVO DE CONCINI, Superior Judge, concur.

ROSS, J., having disqualified, the Honorable Evo De Concini, Judge of the Superior Court of Pima County, was called to sit in his stead.