**Rose O'CONNELL, Plaintiff— Appellant,**

v.

**J.C. PENNEY LIFE INSURANCE COMPANY, a Stock Company, Defendant—Appellee.**

No. 03–16548.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 2005.

Decided May 20, 2005.

Daryl Manhart, Esq., Burch & Cracchiolo, Phoenix, AZ, for Plaintiff–Appellant.

Leslie Kresin, Offidani & Kresin PC, Phoenix, AZ, for Defendant–Appellee.

Before: GOODWIN, BEEZER, and O'SCANNLAIN, Circuit Judges.

MEMORANDUM *

Rose O'Connell appeals a summary judgment in favor of J.C. Penney Insurance Company on her claims of breach of contract and bad faith denial of benefits under an insurance contract. We review the district court's grant of summary judgment de novo, *see Buono v. Norton,* 371 F.3d 543, 545 (9th Cir.2004), and reverse.

Mrs. O'Connell filed a claim for benefits under an accidental death and disability policy issued by J.C. Penney on her husband Richard O'Connell, who died while hospitalized for a broken hip he sustained when he fell while exiting a bus. The immediate cause of Mr. O'Connell's death was pneumonia, which developed during the hospitalization. J.C. Penney denied the request for policy benefits, stating that the policy provided coverage only where the insured's death resulted "solely and independently" from accident or injury, and not where a pre-existing disease contributes to the insured's death. J.C. Penney took the position that Mr. O'Connell's pre-existing Parkinson's disease was a contributing cause of death.

Arizona courts strictly construe policy provisions which provide benefits, as here, only where death or disability is "solely and independently" caused by the accident at issue:

> If the question is whether the death resulted solely from accidental causes, the test is as follows: (a) when an accident causes a diseased condition which, together with the accident, results in death, the accident alone is considered the cause of death; (b) when at the time of the accident the insured was suffering from some disease, but such disease had no causal connection with the death resulting from the accident, the accident is

the sole cause of the death, and (c) when at the time of the accident there was an existing disease which, cooperating with the accident, resulted in the death, the accident cannot be considered as the sole cause, independent of all other causes.

*New York Life Ins. Co. v. Greber,* 55 Ariz. 261, 100 P.2d 987, 987 (1940).

The district court erred by finding that Mr. O'Connell's fall and subsequent hip fracture "did not directly and independently cause his death" because the medical evidence offered on summary judgment did not establish conclusively the cause of Mr. O'Connell's pneumonia. Where, as here, a coverage dispute turns on the cause of the insured's death or disability, summary judgment is proper where the medical evidence concerning the cause of death or disability is in agreement or undisputed. *See, e.g., Button v. Connecticut Gen. Life Ins. Co.,* 847 F.2d 584, 586–87 (9th Cir.1988). Where, however, the facts support more than one reasonable inference concerning the role of a pre-existing condition in death or disability, the issue of causation is reserved for the trier of fact. *See, e.g., Dickerson v. Hartford Accident & Indem. Co.,* 56 Ariz. 70, 105 P.2d 517, 520 (1940) (reversing directed verdict for insurer where conflicting medical evidence would have supported jury verdict in favor of insured).

REVERSED and REMANDED.

O'SCANNLAIN, Circuit Judge, dissenting.

Because there is no evidence in the record suggesting that Richard O'Connell's death was caused "directly and independently" by his fall and resultant hip fracture, the district court properly granted

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

summary judgment to J.C. Penney Life Insurance Co. The court sees the matter differently, however, and I therefore respectfully dissent.

## I

Although the majority correctly invokes the legal framework set forth in *New York Life Insurance Co. v. Greber*, 55 Ariz. 261, 100 P.2d 987, 987 (1940) (*"Greber I"*), its application of that standard to the factual record before us is flawed. In *Greber*, the insured, who suffered from bronchial asthma and myocarditis, was involved in a car accident, which triggered the onset of pneumonia and eventual death. *Id.* at 988. The insurance policy provided for a double indemnity where the insured's death "resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause." *Id.* at 987. The insurance company refused to pay this double indemnity on the ground that the insured's death was at least partially attributable to his preexisting asthma and myocarditis. *Id.* at 988

At trial, a physician testified that the insured's "heart condition, his asthmatic condition, they weren't primary factors but they were contributing factors in my mind...." *Greber v. N.Y. Life Ins. Co.* (*"Greber II"*), 61 Ariz. 341, 149 P.2d 671, 672 (Ariz.1944). The physician further acknowledged that "the chronic myocarditis cannot be overlooked as a contributory factor in either causing the pneumonia or establishing a so-called fertile field for the infection." *Id.* On the basis of that testimony, the Supreme Court of Arizona affirmed a directed verdict in favor of the insurance company because no reasonable jury could have found that the car accident directly and independently caused the insured's death. *Id.* at 673.

## II

Richard O'Connell's death occurred under analogous circumstances. The death certificate indicates that pneumonia was the "final disease or condition resulting in death" and lists end stage Parkinson's disease as a "significant condition[ ] contributing to death but not resulting in the underlying cause." The attending physician's statement identifies pneumonia and congestive heart failure as the primary causes of death and a hip fracture as a secondary or contributory cause. In response to the question whether the hip fracture was, "directly and independently of all other causes, sufficient to produce death," the attending physician answered, "No, it was a contribution to cause of death."

Moreover, when Dr. Ghebleh, one of the physicians who treated Richard O'Connell, was asked whether "an accident aggravate[d] a pre-existing condition causing death," he responded affirmatively and explained that the "fall with subsequent hip fracture compromis[ed] his pulmonary status, already weakened by his Parkinson's disease leading to pneumonia and respiratory failure." Similarly, a doctor who reviewed Richard O'Connell's chart on behalf of the plaintiff concluded that the "patient's hip fracture ... was the initial event in a cascade of medical conditions which led to this patient's death."

This material is the only record evidence that bears upon Richard O'Connell's cause of death, and none of it suggests that his death was directly and independently caused by his fall and resultant hip fracture. Rather—like the doctor's testimony in *Greber*—each piece of evidence indicates either that Richard O'Connell's Parkinson's disease contributed to his death or that his hip fracture was merely one of several contributory factors.

## III

Because no reasonable jury could conclude on the basis of the record evidence that Richard O'Connell's fall was the *direct* and *independent* cause of his death, there is no genuine dispute of fact as to this issue, and I would therefore affirm the district court's grant of summary judgment.